**Lynn E. GOODRICH**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY.**

**Civ. A. No. 76–30.**

United States District Court, D. Vermont.

Dec. 10, 1976.

---

Thomas W. Costello, Webber & Costello, Rutland, Vt., for plaintiff.

Glen L. Yates, Jr., Pierson, Affolter & Amidon, Burlington, Vt., for defendant.

## MEMORANDUM AND ORDER

HOLDEN, Chief Judge.

The plaintiff, Lynn E. Goodrich, brings this action, in the nature of a declaratory judgment action, to establish the maximum coverage to which she is entitled under the uninsured motorist clauses of two automobile liability insurance policies issued by the defendant Lumbermens Mutual Casualty Company. The plaintiff claims that she is entitled to recover up to the full amounts provided for uninsured motorist coverage in each policy. The defendant maintains that under the language contained in the policies the maximum coverage to which the plaintiff is entitled is the limit provided by one policy. The case is presently before the court on the motion of the plaintiff, under Fed.R.Civ.P. 56, for summary judgment on the question of the defendant's maximum potential liability under the policies of insurance. Pursuant to a stipulation entered into by the parties, the material facts are undisputed.

On August 4, 1975, the plaintiff was injured when an uninsured motorist drove his car into her parents' home where she resided. The plaintiff and her father, Earle A. Goodrich, each owned an automobile covered by separate insurance policies issued by the defendant insurer. Both policies were in effect on the date of the accident. The plaintiff's policy provided coverage by way of an uninsured motorist endorsement. Her father's policy, designated as a Family Automobile Insurance policy, also undertook to insure the plaintiff against losses inflicted by uninsured motorists. Each policy provides for the minimum amount of uninsured motorist coverage required under Vermont law—up to $10,000 for each person and up to $20,000 for each accident. See 23 V.S.A. §§ 941 and 801. For the

purposes of this motion, the parties have stipulated that the plaintiff's damages may exceed $10,000. Pursuant to this stipulation, the medical payments provisions of the two policies are not in issue.

Each policy contains language substantially identical to the following:

With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance, under [the uninsured motorists coverage] shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance. [Hereinafter referred to as the "excess-escape" clause.]

Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this [uninsured motorists] coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance. [Hereinafter referred to as the "pro-rata" clause. Both clauses together will be referred to hereinafter as the "other insurance" clauses.]

The defendant asserts that under these provisions its maximum potential liability to the. plaintiff is $10,000—$5,000 under each policy. The defendant has paid the plaintiff $10,000 and therefore asserts that it has no further obligation under the policies.

The plaintiff contends that the defendant's potential liability is not limited to $10,000; rather it is the sum of the maximum figures provided in the two policies in the total amount of $20,000. Her argument rests upon the assertion that under the language of 23 V.S.A. § 941,[1] each of the two policies must provide the plaintiff with up to the minimum coverage of $10,000 required by law. Since application of the "other insurance" clauses quoted above would diminish total recovery to $10,000, the plaintiff asserts that these contractual provisions should not be enforced because they are contrary to the language and purpose of the statute.

---

1. § 941. *Insurance against uninsured motorists*

(a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein, or supplemental thereto, for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.

(b) Every policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall provide insurance against loss resulting from the liability imposed by law for damages because of bodily injury or death of any person within this state or elsewhere in the United States and Canada.

(c) The coverage under (a) and (b) of this section shall be not less than the minimum limits of coverage required under the provisions of section 801 of this title.

(d) For the purpose of this subchapter an "uninsured motor vehicle" includes an insured other motor vehicle where:

(1) The liability insurer of the other motor vehicle is unable, because of its insolvency, to make payment with respect to the legal liability of its insured within the limits specified in its policy; and

(2) The occurrence out of which the legal liability arose took place while the uninsured vehicle coverage required under subsection (a) of this section was in effect; and

(3) The insolvency of the liability insurer of the other motor vehicle existed at the time of, or within one year after, the occurrence.

(e) If payment is made under uninsured motorist coverage, and subject to the terms of that coverage, to the extent of that payment, the insurer is entitled to the proceeds of any settlement or recovery from any person legally responsible for the damage or personal injury, as to which the payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.

The question for decision by the court is whether, under the facts of this case, application of the "other insurance" clauses would contravene the language and purpose of 23 V.S.A. § 941. Although this question has been considered and decided by courts in numerous other jurisdictions,[2] it apparently has not been answered in Vermont. Since the Supreme Court of Vermont has not resolved the question, this court is called upon to forecast the probable direction of the state courts on the present question.

Clearly the "other insurance" clauses in these contracts must comport with the requirements of 23 V.S.A. § 941 or they cannot stand. In *Rhault v. Tsagarakos*, 361 F.Supp. 202, 205 (D.Vt.1973), the court stated:

It is established beyond question that contracts of liability insurance are subject to statutory provisions and are deemed to include the statutory requirements whether they are contained in the insuring agreement or not. The terms of the policy are without force to detract from the requirements of the statute.

The defendant maintains that the statutory language of § 941 establishes that the public policy of this state "is to afford a total fund of $10,000 to the victim of an uninsured motorist." The defendant further contends that, in light of the clear and unambiguous language of the clauses in question and in the absence of any indication that the legislature intended to restrict the use of such clauses, the court should not undertake to "make a new contract for the parties to an insurance agreement." *See Utica Mut. Ins. Co. v. Central Vt. Ry.*, 133 Vt. 292, 294–95, 336 A.2d 200 (1975).

The defendant's position finds support in a minority of the jurisdictions which have considered the effect of "other insurance" clauses in similar contexts.[3] The rationale most frequently stated in support of this position is that in setting minimum amounts of coverage for uninsured motorist insurance policies legislatures have confined their concepts of "public policy" to such amounts. Once motorists and their insurers arranged for the minimum coverage, they would be free to contract for greater insurance or to restrict coverage to the minimum amounts. *See McCarthy v. Preferred Risk Mut. Ins. Co.*, 454 F.2d 393, 395–96 (9th Cir. 1972); *Maryland Cas. Co. v. Howe*, 106 N.H. 422, 213 A.2d 420, 422 (1965) (Kenison, C. J.); *but see Raitt v. National Grange Mut. Ins. Co.*, 111 N.H. 397, 285 A.2d 799, 802 (1971).

A majority of jurisdictions, however, have rejected the concept that the public policy underlying uninsured motorist statutes is to give the injured party the same, but no better protection than he would have if he had been injured by a motorist with the minimum statutory coverage.[4] As stated by the New Jersey Supreme Court,

---

**2.** *See* cases collected in A. Widiss, A Guide to Uninsured Motorist Coverage §§ 2.58–2.61 (1969 & Supp.1976); Annot., Uninsured Motorist Insurance: Validity and Construction of "Other Insurance" Provisions, 28 A.L.R.3d 551 (1969).

**3.** Speaking in terms of "minority" and "majority" rules may be somewhat misleading since some jurisdictions have treated the "excess-escape" clause and the "pro-rata" clause separately, invalidating one while upholding the other. Indeed, in his discussion of the "other insurance" clauses Professor Widiss has dealt with the two clauses separately. According to the cases he has collected in his text, "there is now a heavy preponderance of decisions—I think fairly characterized now as a majority view—in favor of invalidating the "excess-escape" provision of the endorsement." Widiss,

*supra* note 2, § 2.59 at 121 (Supp.1976). With respect to the "pro-rata" clause, most courts have refused to invalidate the provision in its entirety. *Id.* § 2.61 at 114 (1969) & 129 (Supp. 1976). Many of these courts, however, have refused to give the clause effect where, for example, the injured person is insured under two or more policies issued by the same company. *See, e. g., Glidden v. Farmers Auto. Ins. Ass'n*, 57 Ill.2d 330, 312 N.E.2d 247 (1974). The trend of the decisional law appears to be toward giving the "pro-rata" clause effect only after the insured has been fully indemnified, to prevent "double recovery." Widiss, *supra* note 2, § 2.61 at 130 n. 2 (Supp.1976).

**4.** *See* note 3, *supra; see also Blakeslee v. Farm Bureau Mut. Ins. Co.*, 388 Mich. 464, 201 N.W.2d 786, 789–91 (1972).

[t]he most frequently iterated reasons advanced in the majority-rule opinions are: (a) the respective statutes read in terms of prohibition of the issuance of a *policy* not containing the specified UM [uninsured motorist] coverage, not in terms of how much UM coverage an injured UM claimant may recover; (b) statutory UM limits are minimums, not maximums; (c) effectuation of the other insurance exclusion permits the company to obtain a windfall or unjust enrichment by accepting a premium for UM coverage and then denying the coverage paid for; and (d) the UM statutes are designed for the protection of injured motorists and ought to be interpreted liberally in favor of the broadest indemnification of such motorists short of exceeding the damages sustained.

*Motor Club of America Ins. Co. v. Phillips,* 66 N.J. 277, 330 A.2d 360, 367–68 (1974) (emphasis in original).

For the reasons stated above, the court is persuaded that the Supreme Court of Vermont would apply the majority rule.

■ The language of 23 V.S.A. § 941 is clear; it provides that "no policy" may be issued in this state without making provision for uninsured motorist coverage. The statute also states that "every policy" of insurance against liability arising from ownership or use of a motor vehicle must provide coverage for any liability imposed by law. Furthermore, the section states that this coverage "shall be not less than the minimum limits of coverage required under the provisions of section 801." The amounts required under § 801 of Title 23 are "at least $10,000.00 for one person and $20,000.00 for two or more persons killed or injured." There is no indication anywhere in the statutory scheme that the legislature had any other purpose in mind than to require each and every *policy* to afford no less than the coverage specified in §§ 941 and 801. It would be contrary to the language and purpose of the statute to permit the defendant insurer to escape its statutory obligation by arguing that each of the two policies it issued may provide half the coverage it is required to furnish. *See Johnson v. Travelers Indem. Co.,* 359 Mass. 525, 269 N.E.2d 700, 701–02 (1971). Under Vermont law the injured person must be able to recover the statutory minimum from each policy, provided such recovery does not exceed the amount of his actual loss. *See Safeco Ins. Co. v. Jones,* 286 Ala. 606, 614, 243 So.2d 736, 742 (1971).

In light of the clear wording of the Vermont statutes it is hardly necessary to address the defendant's argument that the law contemplates the availability of "a total fund of $10,000" for the victim of an uninsured motorist. In this respect, all that can be added to the above discussion is that the statutes referred to read in terms of minimum amounts that must be available, not in terms of maximum recovery. The "total fund" concept is not supported by the statutory language. *See Blakeslee v. Farm Bureau Mut. Ins. Co.,* 388 Mich. 464, 201 N.W.2d 786, 792 (1972); *Safeco Ins. Co. v. Jones, supra,* 286 Ala. at 614, 243 So.2d at 742; *see also Rhault v. Tsagarakos, supra,* 361 F.Supp. at 206.

■ The uninsured motorist provisions are remedial in nature and must be so construed. The remedy is furnished at the expense of the policy holders, in this instance, at the cost of the plaintiff and her father. As the court noted in *Rhault v. Tsagarakos, supra,*

[t]he design of the statute is to protect a responsibly insured motorist against the unfortunate hazard presented by an injury inflicted in an accident with an irresponsible operator who is uninsured or has fled the scene, leaving the insured without recourse for the damage inflicted by an irresponsible operator. The statute has fashioned the means to benefit an insured who has provided protection for others, to obtain protection for himself. . . . And the court must construe the policy and the statutory provision to achieve the primary purpose of the enactment.

361 F.Supp. at 205–06. *See Motor Club of America Ins. Co. v. Phillips,* 66 N.J. 277, 330 A.2d 360, 369 (1974).

The court holds, on the facts presented here, the "other insurance" clauses in the insurance policies issued by the defendant to the plaintiff and her father are repugnant to 23 V.S.A. §§ 941 and 801 and are invalid to the extent that they purport to deny recovery for actual loss up to a total of $20,000. Should the plaintiff's actual losses be found to be less than $20,000, the "pro-rata" clauses in the policies can be given effect for the sole purpose of prorating the loss among the two policies. Such application will avoid the danger of "double recovery." *See Deane v. McGee,* 261 La. 686, 260 So.2d 669, 673 (1972).

Accordingly, it is ORDERED: *That the motion of the plaintiff, Lynn E. Goodrich, for summary judgment is granted.*