PAUL CARRIER and KUNIYUKI & CHANG, a Hawaii general partnership, Plaintiffs-Appellants, *v.* HAWAII INSURANCE GUARANTY ASSOCIATION, an unincorporated association, Defendant-Appellee

NO. 11020

(CIVIL NO. 85-1272)

JULY 18, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

This case involves interpretation of the Hawaii Insurance Guaranty Association Act found in Hawaii Revised Statutes (HRS) Chapter 431D. The issue is whether the Hawaiian Insurance Guaranty Association (HIGA) must pay for a claimant's attorney's fees where the claimant's insurance company has become insolvent and the claimant has received insurance compensation up to the policy limit. In this situation, for the reasons stated below, we find that HIGA is in fact obligated to pay the insured's attorney's fees.

I.

On May 3, 1983, Appellant Paul Carrier purchased and received a six-month no-fault automobile insurance policy pursuant to HRS Chapter 294 from the Financial Security Insurance Company (FSIC) which provided $50,000 in personal injury protection. On May 28, 1983, Carrier was involved in an automobile accident. He made a claim for no-fault benefits, but FSIC refused to honor his claim. Carrier was forced to file suit against FSIC through the law firm of Kuniyuki & Chang (K & C). The circuit court granted summary judgment and awarded him no-fault benefits plus interest. The order also awarded K & C its attorney's fees. FSIC issued two drafts to K & C, but each was dishonored.

On October 5, 1984, FSIC was declared insolvent. Appellee HIGA undertook FSIC's obligations as provided in HRS Chapter 431D.[1] HIGA picked up payments that FSIC had been making for Carrier's medical expenses and lost wages. When the total amount of benefits Carrier received reached $50,000, HIGA ceased further payments.

_____

[1]HRS § 431D-8(a) (1985), which establishes the powers and duties of HIGA, states in relevant part:
The association [HIGA] shall:
  (1) Be obligated to the extent of the *covered claims* existing prior to the determination of insolvency . . . In no event shall [HIGA] be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.
  (2) Be deemed the insurer to the extent of its obligation on the *covered claims* and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.
(Emphasis added).

K & C made several requests for the payment of its fees, but HIGA denied the requests claiming that Carrier's attorney's fees were not part of its obligations and that in any event it was not required to pay anything beyond the $50,000.

Appellants Carrier and K & C then initiated this suit against HIGA on the issue of attorney's fees. The circuit court granted HIGA's motion for summary judgment finding that as a matter of law HIGA did not have to pay the fees.

## II.

Carrier's automobile insurance policy expressly included attorney's fees as part of its coverage. It stated in relevant part:

No-Fault benefits shall consist of and be defined as:

.    .    .    .

(G) *Attorney Fees and Costs.* Reasonable attorney fees based upon actual time expended and costs of settlement or suit, necessary to effect payment of any or all No-Fault benefits found due under this coverage.

Clearly then, had FSIC been solvent, it would have been liable for Carrier's attorney's fees.

FSIC, however, was declared insolvent and under HRS § 431D-8(a), HIGA was essentially placed in the shoes of FSIC to the extent of "covered claims." HRS § 431D-5(3) (1985) defines "covered claim" as follows:

"Covered claim" means an unpaid claim . . . which arises out of and is within the coverage and not in excess of the applicable limits of [the] insurance policy. . . .

In the present case, Carrier's claim arose from his need for legal representation after FSIC refused to honor its policy. The claim is clearly "within the coverage" because HRS § 294-2(10)(D)(iii) (1985) and the policy itself expressly include attorney's fees as part of a claimant's no-fault benefits.[2] The remaining issue in determining whether the

---

[2] HRS § 294-2(10)(D)(iii) states in relevant part:
"No-fault benefits" . . . means . . . [a]ll appropriate and reasonable expenses necessarily incurred as a result of such accidental harm, including . . . attorney's fees and costs to the extent provided in section 294-30(a).

claim for attorney's fees is a "covered claim" is whether it exceeds the "applicable limits of [the] insurance policy."

HIGA contends that the $50,000 policy "limit" expressed the maximum amount of FSIC's obligation to Carrier. Since the cumulative payments by FSIC and HIGA reached $50,000, HIGA argues that under HRS §§ 431D-5(3) and 431D-8(a), it has no further duty to pay. We will not construe Chapter 431(D) as Appellant contends. To do so would negate the clear and unambiguous language of Chapter 294. In the absence of clear statutory language to that effect, we hold that Chapter 294 is controlling.

HRS Chapter 294, which sets out Hawaii's no-fault auto insurance laws, unambiguously imposes financial obligations on the insurer beyond the policy's stated limit. HRS § 294-4(5) (1985) mandates that "[t]he insurer shall pay, subject to section 294-30, *in addition to no-fault benefits due,* all attorney's fees and costs of settlement or suits, necessary to effect the payment of any or all no-fault benefits found due under the contract." (Emphasis added). In addition, HRS § 294-30 (1985) requires that attorney's fees be treated separately from the claim of no-fault benefits and should be paid directly by the insurer to the attorney.[1] Thus, assuming FSIC was still solvent, it not only would have been required to pay for Carrier's medical expenses and lost wages up to the $50,000 limit, it also would have had to pay to Carrier's attorney's fees regardless of the $50,000 policy limit.

HIGA cites the case of *Sands v. Pennsylvania Insurance Guaranty Association,* 283 Pa. Super. 217, 423 A.2d 1224 (1980), to support its argument. In *Sands,* claimant was denied interest payment beyond his policy limit under the Pennsylvania Insurance Guaranty Association Act which is virtually identical to Hawaii's insurance guaranty laws.

HIGA contends that under *Sands,* it is not obligated to pay more than the policy's stated limit. *Sands* involved interest payment, an item

---

[3] HRS § 294-30(a) states:

A person making a claim for no-fault benefits may be allowed an award of a reasonable sum for attorney's fees, and reasonable costs of suit in an action brought by or against an insurer who denies all or part of a claim for benefits under the policy, unless the court or the commissioner, upon judicial or administrative proceedings, respectively, determines that the claim was fraudulent, excessive, or frivolous. Reasonable attorney's fees, based upon actual time expended, shall be treated separately from the claim and be paid directly by the insurer to the attorney.

which was not included in the insurance policy or the Pennsylvania no-fault statutes. Consequently, we distinguish *Sands* from the case at hand and remain unpersuaded by its holding.

HIGA's final argument stems from its interpretation of HRS § 294-4(5) which states:

> No part of no-fault benefits paid shall be applied in any manner as attorney's fees in the case of injury or death for which the benefits are paid. The insurer shall pay, subject to section 294-30, in addition to the no-fault benefits due, all attorney's fees and costs of settlement or suit, necessary to effect the payment of any or all no-fault benefits found due under the contract. Any contract in violation of this provision shall be illegal and unenforceable, and it shall constitute an unlawful and unethical act for any attorney to solicit, enter into, or knowingly accept benefits under any such contract.

HIGA argues that in the present case, Carrier's insurance policy provision which includes attorney's fees as part of no-fault benefits violates the above statute and so is illegal and unenforceable.

We find no merit to HIGA's argument. In order to prevent the perceived evil of attorneys extracting their fee from the insurance benefits meant for the claimant, HRS §§ 294-4(5) and 294-30 treat attorney's fees separately from other no-fault benefits and require the insurer to pay them directly to the attorney. Hse. Conf. Comm. Rep. No. 39, in 1977 House Journal, at 1263; Hse. Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1221. In this context, HRS § 294-4(5) is intended to prohibit contracts between an insured person and an attorney which would allow attorney's fees to be paid from the claimant's insurance award.

We reverse and remand this case and order the lower court to grant judgment in favor of Appellants.

*Glenn M. Nagata (Ken T. Kuniyuki* with him on the briefs) for Plaintiffs-Appellants.

*Gene K. Lau (Larry C. Y. Lee* with him on the brief) for Defendant-Appellee.